UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ERICKA BROWNE,

       Plaintiff,

  v.

MARSHALL OPCO LLC, d/b/a Medilodge of
Marshall, and PRESTIGE HEALTHCARE LLC,

       Defendants.

---

Mark S. Wilkinson (P68765)
PALADIN EMPLOYMENT LAW PLLC
*Attorney for Plaintiff*
5955 W. Main St., Ste. 618
Kalamazoo, MI 49009
(tel.) 269.978.2474
mark@paladinemploymentlaw.com

---

## C O M P L A I N T

Plaintiff Ericka Browne alleges the following for her complaint against Defendants Marshall Opco LLC, d/b/a Medilodge of Marshall, and Prestige Healthcare LLC.

### NATURE OF THE CASE

1. This is an employment case about unlawful retaliation against a nursing home administrator who investigated and reported a drug-impaired nurse, drug diversion, and unlawful drug destruction.

2. Defendants abruptly and without cause fired Plaintiff Ericka Browne after she discovered, investigated, and ultimately reported severe violations of patient safety protocols and the Controlled Substances Act to state licensing authorities.

3. Fearing regulatory scrutiny, Defendants ordered Browne to return the impaired nurse to work and directed Browne not to make any of the mandatory reports to the state. When Browne refused and reported the violations to the State of Michigan, Defendants fired her the very next day.

4. Defendant's conduct violates Michigan's Whistleblowers' Protection Act, constitutes a wrongful discharge in violation of public policy, and violates the False Claims Act. Browne suffered damages as a result of Defendants' statutory violations that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), liquidated damages, attorney's fees, and litigation costs.

## PARTIES, JURISDICTION, AND VENUE

5. Plaintiff Ericka Browne is an individual who resides in Calhoun County, Michigan.

6. Defendant Marshall Opco is a limited liability company organized under the laws of the State of Delaware. Defendant Marshall Opco operates a skilled nursing facility located in Calhoun County, Michigan.

7. Defendant Prestige Healthcare is a limited liability company organized under the laws of the State of Delaware. Defendant Prestige Healthcare operates a skilled nursing facility located in Calhoun County, Michigan.

8. The Court has personal jurisdiction over Defendants under Michigan Compiled Laws Sections 600.711 and 600.715. FED. R. CIV. P. 4(k)(1)(A).

9. The Court has original subject matter jurisdiction over the claims asserted in the complaint under the False Claims Act in accordance with Title 28 of the United States Code, Section 1331, because those claims arise under federal law. The False Claims Act also indepen-

dently provides for subject matter jurisdiction in the United States courts. 31 U.S.C. § 3730(h)(2).

10.     The Court also has diversity jurisdiction over the claims asserted in the complaint in accordance with Title 28 of the United States Code, Section 1332, because Browne is a Michigan citizen and Defendants are Delaware citizens, and because the amount in controversy in this case exceeds $75,000. On information and belief, none of Defendants' individual members are Michigan citizens.

11.     The Court has supplemental jurisdiction over the state law claims asserted in the complaint under Title 28 of the United States Code, Section 1367, because those claims are so related to the claims over which the Court has original jurisdiction that they form part of the same case and controversy.

12.     Venue is appropriate in this judicial district in accordance with Title 28 of the United States Code, Section 1391(b).

### GENERAL ALLEGATIONS

13.     Browne worked for Defendants as nursing home administrator at their skilled nursing facility located in Marshall, Michigan from June 2025 until May 19, 2026.

14.     Defendants' skilled nursing facility in Marshall derives a substantial portion of its revenue from the federal Medicare and Medicaid programs.

15.     In order to submit claims for payment to the Medicare and Medicaid programs, Defendants must certify compliance with the programs' conditions of participation, which require adherence to pharmacy regulations for long-term care facilities and the Controlled Substances Act.

16.     On April 23, 2026, Browne received reports that the unit manager RN appeared impaired. Browne directly observed this nurse to have constricted pupils, a flushed face, and

slurred speech, and Browne ordered her to undergo a reasonable suspicion drug screen.

17.    In accordance with state and federal regulations, Defendants were required to suspend the nurse under suspicion of impairment pending investigation.

18.    But instead, Defendants' director of nursing allowed the suspected nurse to jointly "destroy" narcotics without an independent, unimpaired third-party witness, breaching the Controlled Substances Act and creating further suspicion of drug diversion and an attempt to cover it up.

19.    On April 25, Browne participated in a telephone call with Defendant Prestige Healthcare's vice president of human resources and vice president of clinical services who tried to minimize Browne's drug diversion concerns and get her to drop the issue. Browne refused and Defendants cut the call short.

20.    On May 2, Defendants' regional supervisor ordered Browne to return the nurse under suspicion to work despite the pending drug screen results. Fearing retaliation from Defendants, Browne complied under protest and informed the nurse that a positive test would result in the immediate termination of her employment.

21.    On May 4, Defendants' director of nursing received the positive drug screen results for the suspected nurse (which were positive for morphine and opiates) earlier during the day, but the director of nursing deliberately withheld the results from Browne until later in the day.

22.    When she did learn about the results, Browne advised the director of nursing that she (Browne) had a mandatory obligation to immediately report the positive drug screen results to the State of Michigan's nursing board and that she planned to do so.

23.    Later that evening on May 4, Browne called Defendants' regional supervisors to

report the confirmed positive drug screen results. Browne explicitly advised Defendants' regional supervisors about the obligation to report the positive drug screen results, unlawful drug destruction, and allowing an impaired nurse to return to work to the State of Michigan's nursing board and that she planned to do so immediately.

24.    In response, Defendants' supervisors explicitly directed Browne not to report the positive drug screen results, unlawful drug destruction, and allowing an impaired nurse to return to work to the State of Michigan nursing board. Defendants also told Browne that Defendant had some sort of "30-day compliance window," and that they would escalate the matter internally.

25.    Between May 4 and May 17, Browne attempted to get an answer from Defendants about what they planned to do concerning the positive drug screen results, the unlawful drug destruction, and allowing an impaired nurse to return to work, but she was unable to do so. It seemed to Browne that Defendants were actively trying to cover up the positive drug screen results, the unlawful drug destruction, and allowing the impaired nurse to return to work.

26.    On May 17, Browne reported the positive drug screen results, unlawful drug destruction, and allowing an impaired nurse to return to work to the State of Michigan's nursing board.

27.    The next day, May 18, Browne told Defendants' regional supervisors about the report she made to the State of Michigan's nursing board concerning the positive drug screen results, unlawful drug destruction, and allowing an impaired nurse to return to work.

28.    The day after that, May 19, Defendants fired Browne without cause or legitimate explanation.

## COUNT 1

### RETALIATION IN VIOLATION OF
### MICHIGAN'S WHISTLEBLOWERS' PROTECTION ACT

29.     Browne repeats and incorporates all of the previous allegations in her complaint.

30.     Michigan Whistleblowers' Protection Act prohibits an employer from discharging an employee because the employee reports or is about to report a violation or a suspected violation of law to a public body.

31.     The State of Michigan's nursing board is a "public body" under the WPA.

32.     Browne explicitly told Defendants that she was going to report the positive drug screen results, unlawful drug destruction, and allowing an impaired nurse to return to work to the State of Michigan's nursing board.

33.     Browne did actually report the positive drug screen results, unlawful drug destruction, and allowing an impaired nurse to return to work to the State of Michigan's nursing board.

34.     Defendants knew about Browne's protected activities under the Whistleblowers' Protection Act.

35.     Defendants terminated Browne's employment because of her protected activities.

36.     Browne suffered damages as a result of Defendants' violations of the Whistleblowers' Protection Act that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

## COUNT 2

### WRONGFUL DISCHARGE IN VIOLATION OF
### PUBLIC POLICY

37.     Browne repeats and incorporates all of the previous allegations in her complaint.

38.     Michigan's Public Health Code provides that a healthcare facility cannot

discharge or otherwise discriminate or retaliate against employee because that employee "[i]n good faith reports or intends to report, verbally or in writing, the malpractice of a health professional or a violation of this article, article 7, article 8, or article 15 or a rule promulgated under this article, article 7, article 8, or article 15." MICH. COMP. LAWS § 333.20176a.

39.     Browne's internal reports to Defendants regarding the nurse's impairment and unlawful narcotic destruction constituted good-faith reports of health professional malpractice (Article 15) and controlled substances violations (Article 7). Additionally, Browne's objection and refusal to adhere to Defendants' directive to return the impaired nurse to work and performing patient care was a direct refusal to violate the facility safety and reporting mandates of Article 17.

40.     Michigan has long promoted a public policy that allows employees to perform their job duties in accordance with federal and state law and without fear of reprisal or retaliation for their compliance with the law.

41.     Michigan's public policy also allows employees to express opinions, concerns, and complaints about violations of federal and state law that they become aware of and that they are asked to ignore, participate in, or otherwise permit to continue.

42.     Michigan courts have specifically authorized a claim for wrongful discharge in violation of public policy based on Section 20176a of Michigan's Public Health Code. *Landin v. Healthsource Saginaw Inc.*, 854 N.W.2d 152 (Mich. Ct. App. 2014).

43.     Defendants terminated Browne's employment because of her reports about and objections to the nurse's impairment, unlawful narcotic destruction and controlled substances violations, and returning the impaired nurse to work and performing patient care.

44.     Defendants' firing of Browne constituted a violation of Michigan's public policy.

45. Browne suffered damages as a result of Defendants' wrongful discharge in violation of public policy that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

## COUNT 3

### RETALIATION IN VIOLATION OF THE FALSE CLAIMS ACT

46. Browne repeats and incorporates all the previous allegations in her complaint.

47. The anti-retaliation provisions of the False Claims Act provide that:

Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1).

48. Defendants bill the Medicare and Medicaid programs for care provided at their nursing home facility and otherwise receive compensation for claims submitted to the United States Government.

49. By billing Medicare and Medicaid for care provided at its facility, Defendants certified their compliance with core conditions of participation, including adherence to the Controlled Substances Act and patient safety regulations.

50. Browne had a reasonable and objective belief that Defendants' actions (including the positive drug screen results, the unlawful drug destruction, allowing an impaired nurse to return to work, and attempting to cover it all up) rendered the facility non-compliant with the Medicare and Medicaid programs, which made Defendants' subsequent claims to Medicare and Medicaid fraudulent and false.

- 8 -

51.     Browne engaged in protected activities by investigating Defendants' actions and otherwise attempting to get Defendants to stop or correct those actions.

52.     Defendants knew about Browne's protected activities under the False Claims Act.

53.     Defendants terminated Browne's employment because of her protected activities.

54.     Browne suffered damages as a result of Defendants' violations of the False Claims Act that include, but are not limited to, back wages, frontpay, liquidated damages, attorney's fees, and litigation costs.

## JURY DEMAND

55.     Browne demands a trial by jury on all issues so triable. FED. R. CIV. P. 38(b).

## RELIEF REQUESTED

56.     Plaintiff Ericka Browne requests that the Court enter a judgment in her favor and against Defendants Marshall Opco LLC, d/b/a Medilodge of Marshall, and Prestige Healthcare LLC in an amount that will fully and fairly compensate her for all of her damages, losses, expenses, back wages, emotional distress, attorney's fees, litigation costs, and interest.

57.     Browne also requests that the court grant her any additional relief, both legal and equitable, as the Court determines to be appropriate and just under the circumstances.

ERICKA BROWNE

Dated: August 5, 2026                    By:    /s/  Mark S. Wilkinson

Mark S. Wilkinson (P68765)
PALADIN EMPLOYMENT LAW PLLC
*Attorney for Plaintiff*
5955 W. Main St., Ste. 618
Kalamazoo, MI 49009
(tel.) 269.978.2474
mark@paladinemploymentlaw.com